UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

TRAVIS HOLLOWAY, PH.D.,

                              Plaintiff,                     **COMPLAINT**

             -against-                         Dkt. No. 1:25-cv-3532

FARMINGDALE STATE COLLEGE OF THE STATE
UNIVERSITY OF NEW YORK,

                             Defendant.

------------------------------------------------------------------------X

Plaintiff Travis Holloway, by his attorneys Giskan Solotaroff & Anderson LLP, for his Complaint against Defendant Farmingdale State College of the State University of New York, alleges as follows:

## PRELIMINARY STATEMENT

1.     Dr. Travis Holloway brings this action against his former employer, Farmingdale State College of the State University of New York ("Farmingdale" or "FSC") for discrimination on the basis of sex and sexual orientation and retaliation after he complained of discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq.*

2.     Dr. Holloway was employed as an Assistant Professor of Philosophy in Farmingdale's English and Humanities Department from September 1, 2017, to August 29, 2023.

3.     Dr. Holloway identifies as a queer, gay, gender-non-conforming person. He uses he/they pronouns. While employed by Farmingdale, he was the only queer and gender-non-

conforming faculty member in the department, and, to his knowledge, the only openly gay full-time faculty member at FSC.

4.      Unfortunately, throughout most of Dr. Holloway's time at Farmingdale, he encountered an environment in which queer identity was repeatedly invalidated and campus-wide LGBTQ+ initiatives were rejected.

5.      Farmingdale's President at the time, John S. Nader, expressed animosity towards Dr. Holloway's support of LGBTQ+ initiatives on campus since at least October 2021, and voiced hateful and ignorant comments about important symbols of queer identity, such as the rainbow Pride Flag.

6.      In 2023, Dr. Holloway applied for tenure, which is termed "continuing appointment" in the SUNY system.  Every committee and reviewer that reviewed his application, including Farmingdale's Provost, Laura Joseph, recommended him unanimously and enthusiastically for tenure.  He was thus supposed to receive his tenure letter from the last signatory, President Nader, on or around September 1, 2023.

7.      Instead, on August 29, 2023, President Nader, on behalf of Farmingdale, terminated Dr. Holloway and denied him tenure.  The timing and circumstances of the termination and denial of tenure reveal that the decisions were discriminatory and retaliatory for several reasons.

8.      First, the Farmingdale administration, under former President Nader, engaged in a sustained pattern of discrimination against members of the LGBTQ+ community, and President Nader expressed particular animosity towards Dr. Holloway in relation to his advocacy and support for LGBTQ+ students and initiatives at Farmingdale.  In fact, in the days just prior to Dr. Holloway's termination, Dr. Holloway had been complaining about a vandalized rainbow Pride

flag just outside of his office.  In an August 24, 2023 email, Holloway reported the issue to President Nader and other senior FSC administrators.  None of them responded.

9.      Second, and even more disturbing, Farmingdale fired Dr. Holloway eleven days after it dismissed his protected Title IX complaint, in which Dr. Holloway alleged he had been discriminated against on the basis of his sexual orientation and gender.  He filed this complaint on the advice of his supervisor and Farmingdale's Title IX Investigator after his former colleague, Dr. Katelynn DeLuca, filed a baseless complaint against him that was full of false allegations and discriminatory animus.  Although Dr. DeLuca's complaint was correctly found unsubstantiated, Farmingdale failed to conduct a full and fair investigation into Dr. Holloway's complaint against DeLuca and instead fired him after he engaged in protected activity by filing a complaint.

10.     Third, after Dr. DeLuca's initial discrimination complaint against Dr. Holloway was found unsubstantiated, she filed yet another complaint against Dr. Holloway, this time alleging that Dr. Holloway's protected Title IX complaint constituted retaliation.  Even though Dr. Holloway had been given numerous assurances that his Title IX complaint would constitute protected activity, FSC still permitted DeLuca's retaliation complaint to proceed, in violation of its own promises and protocols, and then substantiated her (improper) claim of retaliation. Indeed, when FSC denied Dr. Holloway tenure and abruptly fired him on August 29, 2023, its stated justification was the August 24, 2023 report substantiating DeLuca's claim of retaliation. The sole evidence of retaliation was Dr. Holloway's protected activity.

11.     Finally, the Farmingdale administration has a known and well documented history of retaliating against faculty members who engage in protected activity and is currently facing at least two other federal lawsuits alleging it has violated anti-retaliation laws.

3

12.     Farmingdale's failure to grant Dr. Holloway tenure and its termination of Dr. Holloway's employment were discriminatory and retaliatory.

## THE PARTIES

13.     Plaintiff Travis Holloway is domiciled in New York.

14.     Defendant Farmingdale State College of the State University of New York is a New York State institution located in Farmingdale, New York.  Farmingdale is a recipient of financial assistance from the federal government.

## VENUE AND JURISDICTION

15.     This Court has subject matter jurisdiction over Dr. Holloway's claims against Defendant pursuant to 28 U.S.C. § 1331 (federal question).

16.     Venue is properly before this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claim occurred in this District.

17.     This Court has personal jurisdiction over Defendant Farmingdale because it is a New York State institution and employed Plaintiff within New York State.

18.     All conditions precedent to maintaining this action have been fulfilled.  On January 15, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  On April 9, 2025, the EEOC issued a Notice of Right to Sue ("NORTS").  This action was properly instituted within 90 days of the NORTS.

## FACTS

**A.  Dr. Holloway's Background and Accomplishments at Farmingdale.**

19.     Dr. Holloway received his undergraduate degree in Philosophy and Religion from Belmont University, a master's degree in Philosophy from Boston College, a master of fine arts degree in Creative Writing from NYU, and a Ph.D. in Philosophy from the State University of New York, Stony Brook.  He is the recipient of a prestigious U.S. Fulbright Scholarship.

20.     Prior to joining Farmingdale as a faculty member, Dr. Holloway taught at Stony Brook University, New York University, Vassar College and Pratt Institute.  His doctoral program director at Stony Brook described Holloway as "one of the best graduate students I have encountered."  His supervisor at Pratt Institute called him "one of the very finest instructors I had the privilege to supervise during my term as Chairperson," and his supervisor at Vassar College described him as "a very collegial presence in the Department [who] generously contributed to the life of the College in a variety of ways."

21.     Dr. Holloway was hired as a part-time Assistant Professor in the Department of English and Humanities at FSC in January of 2014.

22.     In April 2017, he accepted a full-time role as an Assistant Professor, a tenure-track position.

23.     At Farmingdale, Dr. Holloway was well regarded by students, highly successful in his professorial capacity, and admired for his warm demeanor.  He received numerous accolades for his teaching, scholarship, and service to the school.

24.     According to faculty H-index research ratings, which assess the impact of faculty research, Dr. Holloway was the most productive member of his department and the ninth most productive faculty member at FSC.

25.     Dr. Holloway's supervisor and the former Chair of the Department of English and Humanities, Dr. Marlene Groner, described him as an "extraordinary colleague . . . [who is] always thoughtful, gracious, calm, and civil."  The former chair of Dr. Holloway's tenure committee, Louise Napolitano-Carmen, was impressed by his "caring and thoughtful demeanor." The current Chair of the Department of English and Humanities, Mary Caulfield, described Holloway as highly supportive of his fellow junior colleagues, herself included, and "a warm and engaging mentor to some of our most vulnerable students."

26.     As part of his service to the school, Dr. Holloway proudly supported LGBTQ+ initiatives and students on campus.  In May 2023, he was invited to give the address at FSC's first graduation ceremony honoring LGBTQ+ students, the Lavender Graduation Ceremony.  Dr. Napolitano-Carmen described him as someone LGBTQ+ students "felt comfortable enough to confide in about hostilities they experienced on campus."

27.     Dr. Holloway was the recipient of Farmingdale's Outstanding Scholarly Publication Award in 2023.  The award honored Holloway's "exceptional commitment to Farmingdale's students."

28.     Dr. Holloway has published five books.  His 2022 book, *How to Live at the End of the World*, became a bestseller in the philosophy category and launched internationally in early 2023.

29.     Students routinely described Holloway in their evaluations as "one of the best instructors I have come across," "one of my favorite professors of all time," and "my favorite professor here at Farmingdale."  When asked to describe Dr. Holloway using three adjectives, one student called him "sincere, considerate, thoughtful."

30.    One Farmingdale professor observed Dr. Holloway's teaching on several occasions and reported that he was a "phenomenal" teacher.  She elaborated by calling Dr. Holloway a "stellar scholar and human being."

**B.  Dr. Holloway is Approved for Tenure at All Levels Prior to the President: Late 2022-Mid-2023.**

31.    Starting in April 2017, Dr. Holloway was employed by FSC as an Assistant Professor.

32.    In December of 2018, Dr. Holloway was recommended for and received a two-year reappointment effective September 1, 2019, through July 31, 2021.

33.    In August of 2021, he was again recommended for and received a two-year reappointment, effective September 1, 2022, through August 31, 2024.

34.    In the summer of 2022, Dr. Holloway became eligible for tenure.

35.    At Farmingdale, tenure is based on a candidate's accomplishments in teaching, scholarship, and service.

36.    Dr. Holloway submitted his tenure package in fall 2022, which, pursuant to the SUNY protocols, was reviewed by: the Chair of the English and Humanities Department; the Dean of the School of Arts and Sciences; the Departmental Committee on Continuing and Term Appointment ("CCTA"); the College-wide CCTA; and the Provost, Laura Joseph.

37.    After reviewing Dr. Holloway's tenure package, the Departmental CCTA approved Dr. Holloway for tenure by a 3-0 vote.

38.    After reviewing Dr. Holloway's tenure package, the College-wide CCTA approved Dr. Holloway for tenure by a 7-0 vote.

39.     After reviewing Dr. Holloway's tenure package, the Chair of Dr. Holloway's department, Marlene Groner, approved Dr. Holloway for tenure.

40.     After reviewing Dr. Holloway's tenure package, the Dean of the School of Arts and Sciences, Charles Adair, approved Dr. Holloway for tenure.

41.     The recommendations of the Chair, the Dean, and the two CCTAs were conveyed to Provost Joseph.

42.     After reviewing Dr. Holloway's tenure package, Provost Joseph recommended Dr. Holloway for tenure in the Summer of 2023.

43.     Dr. Holloway's tenure application was then presented to President Nader in approximately August 2023.

44.     With his tenure application having received approval at every level of review prior to the President, Dr. Holloway awaited President Nader's decision.

45.     It is exceedingly rare for a candidate who has been recommended for tenure by the Chair, the Dean, the CCTA, and the Provost to _not_ be recommended for tenure by the President.

46.     Having been approved for tenure at every level of review, Holloway thus reasonably believed that President Nader would award him tenure and promotion, as President Nader had granted tenure and promotion to Dr. Holloway's colleagues who had also been approved at all levels.

**C.  Anti-LGBTQ+ Bias on the Farmingdale Campus: 2021-2023.**

47.     During Dr. Holloway's career at Farmingdale, former President John Nader and other FSC administrators made various comments and decisions that indicate discriminatory bias towards the LGBTQ+ community and Dr. Holloway.

8

48.     Dr. Holloway served as a faculty advisor to Farmingdale's Pride Club, an LGBTQ+ student organization, and collaborated with the club on a variety of initiatives.

49.     One such initiative led by the Pride Club with Dr. Holloway's support was an effort to have Farmingdale fly the rainbow Pride Flag on campus in October 2021.  October was selected because it is celebrated as LGBTQ+ History Month.

50.     During a meeting held between Nader and a student representative of the Pride Club, Nader derided the proposal to fly the Pride Flag, comparing the flag to that of a hate group.

51.     Nader specifically used the examples of the Nazis and the NRA as points of comparison and suggested that displaying the Pride Flag would invite the display of these groups' flags and/or paraphernalia.

52.     Also during this meeting, Nader pointedly asked the Pride Club's student representative if the proposal to fly the Pride Flag was Dr. Holloway's idea.  This struck the student as presumptuous and odd, considering Dr. Holloway was not present at the meeting.

53.     Nader ultimately rejected the Pride Club and Dr. Holloway's proposal and the Pride Flag was not flown on campus.

54.     On another occasion in 2022, the Pride Club advocated for the installation of an "LGBTQ+ crosswalk" on campus.  Nader criticized the idea, despite other colleges within the SUNY system having decorated their own crosswalks to commemorate and honor the LGBTQ+ community.

55.     In approximately late February 2023, LGBTQ+ students and other minority student leaders complained to SUNY Chancellor John B. King, Jr., about discrimination and harassment involving Farmingdale's senior administration in a closed-door meeting on FSC's

campus. Unfortunately, the discrimination and harassment against members of FSC's LGBTQ+ community not only continued after this, but escalated.

56.     In approximately March and early April 2023, a transgender student at Farmingdale complained to a gay member of the Pride Club that he was being deadnamed[1] and bullied by one of his professors in front of other students.

57.     In response, on or about April 18, 2023, the Farmingdale Student Government Association ("SGA") drafted a "letter of unity" condemning LGBTQ+ hate on campus and affirming Farmingdale's commitment to LGBTQ+ students, which it presented to Nader and Farmingdale's Administration.

58.     Nader dismissed an initial draft of the letter, and when he later met with the student who wrote it on April 26, 2023, Nader was hostile to the gay student for having written the letter of unity and dismissive of the transgender student's allegations, seemingly implying that he did not believe the student was discriminated against and that the meeting was a waste of his time.

59.     Nader asked the student if "Travis [wrote] the letter," once again insinuating that Dr. Holloway had orchestrated an LGBTQ+ initiative, even though Dr. Holloway was not present at the meeting or even aware of the student's letter.

60.     The letter was never circulated or presented publicly.

---

[1] "Deadnaming" refers to the practice of calling a transgender person by the name assigned to them at birth (often associated with the sex assigned to them at birth) rather than the name by which they prefer to be called. It is considered by the transgender community to be profoundly invalidating and hurtful.

61.     The Pride Club, in collaboration with the SGA, had by this time succeeded in installing benches on campus meant to symbolize and honor the LGBTQ+ community.  The benches were painted with the colors of the rainbow, an important LGBTQ+ symbol.

62.     Yet on April 27, 2023, *the day after President Nader's meeting with the student author of the letter*, the benches were removed by Farmingdale's Administration.

63.     When students requested that some other installation, decoration, or gesture of support towards the LGBTQ+ community be organized in place of the benches, Farmingdale refused.

64.     In May 2023, Nader was asked to speak at Farmingdale's first Lavender Graduation, a ceremony on the day of commencement to recognize the accomplishment of LGBTQ+ students but declined.  Although Nader attended the event, he appeared completely disengaged and uninterested while sitting in the audience, refusing to sit in the seat reserved for him in the front row, and was disrespectful to the student who organized the event when speaking with that student before the ceremony.  Holloway, in contrast, was warm and welcoming and graciously addressed graduating students and their families at the event.

**D. Dr. Holloway's Colleague Files an Unfounded and Discriminatory Complaint Against Him: February-June 2023.**

65.     As described in Section B above, in the 2022-2023 academic year, Dr. Holloway applied for continuing appointment.  Dr. Holloway's colleague, Dr. Katelynn DeLuca, who also taught in the Department of English and Humanities but specialized in entirely different academic fields of study, was applying for continuing appointment at the time.

66.     DeLuca was very insecure about her own tenure case and falsely believed that she was in competition with Dr. Holloway for tenure.

11

67.     In mid-February 2023, Dr. Holloway received Farmingdale's highest award for scholarship, the Outstanding Scholarly Publication Award, for his bestselling book, *How to Live at the End of the World*.  The book launched internationally that same month to great acclaim. Dr. Holloway was invited to speak at numerous events and was interviewed by several prestigious media outlets.

68.     Also in mid-February 2023, DeLuca's supervisor asked Dr. Holloway to organize and lead a campus presentation on ChatGPT.

69.     DeLuca made a fuss about this, claiming that ChatGPT was related to *her* area of expertise, not Holloway's.  Despite this, Holloway led the presentation as directed.

70.     Just one week later, on February 24, 2023, DeLuca filed a baseless Title IX complaint against Dr. Holloway.  She falsely claimed that Dr. Holloway had discriminated against her on the basis of gender by allegedly initiating professional disputes with her and attempting to tarnish her professional reputation.

71.     DeLuca's complaint is bloated, vague, and filled with oblique references to Dr. Holloway's supposedly "aggressive" behavior, but fails to specify any facts indicating that Dr. Holloway's discriminated against her.

72.     DeLuca also makes several contradictory claims in her complaint, including that she was "fearful" of encountering Dr. Holloway on campus, while also describing him as "classic passive-aggressive."

73.     DeLuca's complaint is rife with petty grievances and trivial slights concerning workplace interactions.

12

74.     Moreover, many of DeLuca's claims against Dr. Holloway were fabricated, defamatory, and obviously motivated by DeLuca's own insecurity rather than actual evidence of discrimination.

75.     In addition to the fact that the allegations in her complaint against Dr. Holloway were groundless, DeLuca misgendered Dr. Holloway as "male" and employed hateful and derogatory stereotypes to falsely present Dr. Holloway as threatening.

76.     This is part of a pattern of DeLuca's: she had previously referred to Dr. Holloway using a derogatory, effeminate term.

77.     Colleagues in the same department, including DeLuca's supervisor, noted DeLuca's "odd, undue hostility towards" Dr. Holloway.  The Chair of the committee overseeing their tenure cases stated that DeLuca had a deeply disturbing pattern of depicting members of minority groups as a threat to her.

78.     Colleagues also described DeLuca's pattern of unprofessional conduct and contrasted it to Holloway's professional and calm demeanor.  For example, Dr. Holton Brathwaite wrote: "Katelynn [DeLuca] has had conflicts, made false accusations, and depicted others as threats."  In contrast, Holton Brathwaite said she was "not aware of any conflicts between Travis [Holloway] and his colleagues in the English and Humanities Department over the six years that he has been with us. He has always been courteous and professional."  An administrator in the Department of English and Humanities explained how DeLuca "exhibited excitable, agitated behavior in my presence time and time again," while Dr. Holloway "has been a professional and caring presence in the department."

79.     In early March 2023, Dr. Holloway provided a detailed rebuttal of DeLuca's false charges.  He sent the rebuttal to several senior administrators at Farmingdale, including President

13

Nader, Assistant Vice President and Director of Human Resources ("HR") Marybeth McCloskey, and Investigator Aqueelah Speakes.

80.     In this March 2023 correspondence, Dr. Holloway also complained that he had been discriminated against based on his sexual orientation, sex, gender identity, and gender expression.

81.     Upon information and belief, DeLuca was furious about Holloway's response to her complaint.

82.     On March 26, 2023, in a short addendum to his rebuttal emailed to the same parties, Dr. Holloway described his own independent concerns about DeLuca's odd hostility towards him and her use of stereotypes to depict him as a theat.

83.     Three days later, on March 29, 2023, Ms. McCloskey held a meeting with Dr. Groner, Dean Adair, and Investigator Speakes.  During the meeting, McCloskey proposed delaying and/or denying Holloway tenure.  Dr. Groner strongly disagreed.

84.     On April 19, 2023, Speakes launched a "formal investigation" against Holloway. When asked, she would not provide a reason for why she was doing this or answer questions about the process.  This was, perhaps not coincidentally, the day after Farmingdale's SGA emailed the "letter of unity" to President Nader, in which the SGA denounced anti-LGBTQ+ hate and affirmed Farmingdale's commitment to LGBTQ+ students.  As detailed in Section C above, Nader strangely and repeatedly asked if Dr. Holloway was behind the letter.  (He was not.)

85.     In approximately mid/late April 2023, Ms. McCloskey held a second meeting with Dr. Groner, in which McCloskey stated that Dr. Holloway should not receive tenure.  Once again, Dr. Groner strongly disagreed.

86.    Throughout April and May of 2023, Dr. Holloway repeatedly asked to resolve DeLuca's complaint informally.  Despite his requests, Investigator Speakes did not attempt to use the prescribed informal mediation procedure.

87.    Instead, Speakes told Dr. Holloway that he needed to file a Title IX complaint if he wanted protection.  Dr. Holloway wrote to Speakes several times, indicating that he strongly preferred *not* to file a complaint.  However, because it was clear that Farmingdale was not interested in engaging in an informal resolution process, on Speakes's advice, he prepared a draft complaint.

88.    On June 16, 2023, Farmingdale correctly determined that there was insufficient evidence to support Dr. DeLuca's complaint against Dr. Holloway.

**E.  After Dr. Holloway Files a Protected Complaint of Discrimination, DeLuca Files *Another* Complaint Against Dr. Holloway: May-June 2023.**

89.    In May 2023, Investigator Speakes advised Dr. Holloway to file the draft complaint, told him that it would protect him, and told him that he would be protected from retaliation.

90.    In May 2023, Holloway's supervisor, Dr. Groner, also advised him to file the draft complaint on the basis that he "need[ed] protection from retaliation and future allegations." Dr. Groner elaborated: "Not to find a way to protect him from this, document this, or stop this would, I think, be worrisome for any reasonable person."

91.    On May 24, 2023, Dr. Holloway reluctantly filed his complaint, alleging that DeLuca had discriminated against him based on his sexual orientation, sex, gender identity, and gender expression.  He was reluctant to file the complaint not because he believed it did not have

merit, but because he had preferred to resolve any dispute with his colleague using the informal dispute resolution processes.

92.    Unfortunately, the complaint was not seriously investigated; indeed, Investigator Speakes failed to interview key witnesses and ignored crucial interview material.

93.    On June 20, 2023, Dr. Holloway was informed that DeLuca had filed *another* complaint against him.  This second complaint purported that Dr. Holloway had retaliated against her by filing a protected Title IX complaint and by submitting a rebuttal to her initial complaint.

94.    The paperwork stating the charge and requesting a response was withheld from Dr. Holloway, even though he requested it multiple times.  Investigator Speakes, HR, and others ignored and/or denied Dr. Holloway's requests to respond to DeLuca's retaliation complaint

### F. Farmingdale Senior Administrators Target Dr. Holloway and Warn Him Not to Complain About or Voice Opposition to Discrimination: June-August 2023.

95.    In June 2023, after Chairperson Groner refused to deny Dr. Holloway tenure in the meetings with Ms. McCloskey, President Nader personally intervened and called Dr. Laurie Rozakis, a senior member of the English and Humanities Department, concerning Dr. Holloway. Dr. Rozakis conveyed that her belief that Nader was "siding with Katelynn [DeLuca] and may dump Travis [Holloway]."

96.    In July 2023, having not received any response from Speakes regarding his May 24 complaint of discrimination, Dr. Holloway contacted Dean Charles Adair to restate his concern that he was being discriminated against based on his gender and sexual orientation.

97.    On July 5, 2023, Dean Adair wrote back, encouraging Dr. Holloway to "seriously consider" a job at another university and referring to Dr. Holloway as "a bit of an outlier."

16

98.     Dr. Holloway, seeking support and relief from discriminatory actions that placed him at the margins of his professional environment, was confused and disheartened to receive Dean Adair's message, which effectively affirmed his status as 'other' within FSC.

99.     On August 1, 2023, Dr. Holloway was directed to attend a meeting with Farmingdale Provost Laura Joseph and Dean Adair's replacement, incoming Dean Tom Ward. Provost Joseph remarked during the meeting: "***You know, Travis, it is never a good idea to say something happened to you because you are a minority***." She also pointedly stated: "I need to know whether you are able to let this go." (By "this," Provost Joseph was referring to Dr. Holloway's complaint of discrimination against DeLuca.)

100.    It was clear to Dr. Holloway that Provost Joseph was warning him not to make complaints based on his protected status as a non-binary, queer person, and to abandon his legitimate, well-founded complaint of discrimination against DeLuca.

**G.  Dr. Holloway Refuses to be Silenced and is Retaliated Against.**

101.    Despite the attempts of senior administrators to push Dr. Holloway out of Farmingdale and silence his voice, Dr. Holloway remained undeterred.

102.    On August 15, 2023, having still not received a report from Farmingdale regarding his May 24 complaint of discrimination, and with the upcoming school year fast approaching, Dr. Holloway was growing anxious about returning to campus without a resolution to his complaint of harassment and discrimination. He therefore wrote to President Nader, copying Provost Joseph and Dean Ward on the email, about the harassment and discrimination. Dr. Holloway received no response from Nader, Joseph, or Ward.

103.    Instead, three days later, on August 18, 2023, Speakes sent Holloway a report dismissing his complaint of discrimination.

17

104.     Then, Speakes informed Dr. Holloway that she had found "sufficient evidence" that he had retaliated against DeLuca by filing a complaint of discrimination against her.

105.     FSC's finding directly contravened the advice that Speakes herself had given Dr. Holloway: that he should file a complaint of discrimination in order to protect himself, and that the filing of such a complaint would protect him from retaliation.

106.     On August 24, 2023, Speakes produced a report stating that Holloway retaliated against DeLuca on February 21, 2023.  This was both untrue and impossible, since DeLuca did not file her complaint against Holloway until February 24, 2023.

107.     Speakes then produced an amended report in which she changed the date of the retaliation to May 2023.  *The sole evidence of retaliation was Holloway's protected activity*.

**H.  Rather than Granting Dr. Holloway Tenure, Farmingdale Retaliates Against Him.**

108.     On August 23, 2023, Dr. Holloway was on campus, preparing for the upcoming semester.

109.     Outside his office at Farmingdale, there was a "Safe Space" sign with a Pride Flag that had been vandalized. (Dr. Holloway does not know how, when, or by whom it was vandalized.)  On several occasions throughout early to mid-2023, Dr. Holloway had reported the vandalized sign to college personnel and administrators and respectfully asked them to take steps to have the vandalized sign removed.  Farmingdale refused to take steps to remove it.

110.     On August 24, 2023, after his prior attempts to have the vandalized flag removed were unsuccessful, Dr. Holloway reported the issue directly to Nader, copying Dean Adair, Dean Ward, and Provost Joseph on the email.  None of them responded.

111.    The following day, August 25, 2023, Dr. Holloway emailed the Affirmative Action Officer about the vandalized sign and copied Farmingdale HR and Nader.  Once again, no one responded.

112.    On August 29, 2023, Dr. Holloway asked the department's Office Manager and the Chair of his department to put in a campus work order to have the defaced sign taken down.

113.    That same day, just a few hours later, Dr. Holloway was denied continuing appointment and fired.

114.    Dr. Holloway received two letters dated August 29, 2023: one denying him tenure and the other terminating his employment effective immediately.  The justification for Holloway's sudden termination and denial of tenure was the August 24, 2023 report substantiating DeLuca's claim of retaliation.

115.    Despite the fact that every reviewer and committee that had reviewed Dr. Holloway's tenure package enthusiastically and unequivocally recommended him for tenure, President Nader did _not_ recommend Dr. Holloway for continuing appointment.

116.    Nader has testified under oath that, in his 8 years as President of FSC, he could only recall two instances where he rejected the unanimous recommendations of the two CCTAs, the Chair, and the Dean and denied tenure to a candidate.  One instance was this case.

117.    Most of the time, for tenure decisions, the President follows the Provost's recommendation.

118.    Farmingdale used Dr. Holloway's protected acts – including his advocacy for LGBTQ+ students and initiatives, his Title IX complaint of discrimination, and his complaints regarding the defaced Pride Flag – as the basis and justification for firing him and denying him tenure.

119.    By letter dated September 11, 2023, Dr. Nader stated that the decision to non-renew Dr. Holloway's appointment was based on concerns regarding his alleged "lack of collegiality and civility."

120.    Collegiality and civility are not the stated criteria for tenure.

121.    As Groner stated, "If collegiality and civility were the criteria for tenure, half of the faculty and staff would not get tenure."

122.    Moreover, if anyone should have been denied tenure and promotion because of a lack of collegiality and civility, it should have been DeLuca.  As Groner noted, "colleagues in the department have had conflicts with [DeLuca] in ways that they have not with Dr. Holloway. Dr. Holloway, by contrast, has a reputation for being a gracious and supportive colleague."

123.    Nader's assertion that Dr. Holloway lacked collegiality and civility could not be further from the truth. Many of Dr. Holloway's former colleagues at Farmingdale have stated that he was a kind, collegial, and truthful co-worker, and that he is a person of great integrity.

124.    Dr. Holloway appealed the decision to deny him tenure and an independently-led committee conducted an investigation and then issued a thorough report in December 2023.

125.    The investigative report indicated that there was "no evidence" to support Nader's assertions.  The investigators concluded that "[Dr. Holloway's] name and status as a queer person was tied to events that Administration found unacceptable."[2]  Pursuant to SUNY guidelines and protocol, the investigative report was sent to SUNY Chancellor John B. King, Jr. for his review.

---

[2] Disturbingly, shortly after investigators wrote their report, the lead author's academic center on campus was taken away from her, and the co-author's daughter's employment at FSC was terminated.

126.    Chancellor King did not award Holloway tenure after receiving the investigative report.

127.    Upon information and belief, in the past, when tenure decisions at FSC have been successfully challenged through the appeals process, the Chancellor has awarded tenure. Here, however, Chancellor King called for a new investigation with a new committee.

128.    Thereafter, another independently-led committee was convened and a second investigation was conducted.

129.    The second investigative report, submitted to SUNY on May 1, 2024, concluded:

> Dr. Nader's assertion [that Dr. Holloway lacks civility and collegiality] is patently false, as attested to by more than a dozen colleagues who provided testimony through interviews and letters. The committee was not able to find even one example of Dr. Holloway being uncivil or not collegial. In addition to the work of our committee, it is notable that every person in a supervisory position in Dr. Holloway's department—Dr. Holloway's three Department Chairs and two CCTA Chairs—wrote letters disputing the President's actions; all attested to Dr. Holloway's consistent civility and collegiality. Indeed, they described Dr. Holloway as one of the kindest and most gracious people they had ever worked with in the College.

130.    Chancellor King, who was made aware of complaints of discrimination at FSC after LGBTQ+ students complained to him in early 2023, still did not award Holloway tenure.

131.    Chancellor King made this decision despite the findings of two separate committees concluding that Nader's decision to deny Holloway tenure lacked support and Holloway had been subject to discrimination.

## I. Farmingdale Has Engaged in a Sustained Pattern of Retaliation and Discrimination.

132.    The experiences of several current and former Farmingdale employees reveal a pattern of retaliation and discrimination.

133.    For example, former FSC Professor Stevie Famulari was abruptly denied tenure after complaining of discriminatory practices in 2021.  Professor Famulari was firmly on track to receive continuing appointment, having been recommended for tenure at all levels of the review prior to the Provost.  However, after Professor Famulari advocated for the inclusion of a student with disabilities in an internship program, complained of sexist and racist behavior within Farmingdale's Urban Horticulture Department, and lobbied for the consideration of diverse candidates for new departmental staff positions, she was denied continuing appointment and effectively terminated.

134.    Farmingdale is currently the Defendant in an ongoing lawsuit in this District arising from Professor Famulari's retaliation and discrimination claims, *Famulari v. Farmingdale State College of the State University of New York,* 22-cv-3601 (JS) (AYS).

135.    Farmingdale has also been accused of retaliation by a former campus police officer, Beth Malenovsky.  According to Officer Malenovsky's lawsuit, in March 2022, after she complained of gender discrimination to Farmingdale's Human Resources Department, Farmingdale launched a retaliatory campaign against her, falsely alleging that Malenovsky had endangered her children while on the job in August 2021.  Malenovsky was notified during this time that she was suspended with pay and not allowed on campus.

136.    Farmingdale is currently the Defendant in an ongoing lawsuit filed by Ms. Malenovsky in this District alleging discrimination and retaliation, *Malenovsky v. Farmingdale State College et al.,* 2:25-cv-00399 (SJB) (ST).

137.    Many other faculty members have expressed their belief that retaliation is widespread at Farmingdale, and that after they complained to FSC administrators or opposed unlawful discrimination, they were retaliated against.

**J.  Farmingdale's Continued Retaliation Against Dr. Holloway.**

138.    Farmingdale has claimed that Holloway's firing was not discriminatory or retaliatory, but rather a business decision.

139.     However, in November 2024, approximately three months after finalizing Dr. Holloway's termination, Farmingdale published a job posting for a full-time tenure-track position in philosophy—Dr. Holloway's former role.

140.    Dr. Holloway applied, knowing firsthand that he possessed all the required qualifications for the position he once held.

141.    By early February 2025, at least two members of the departmental job search committee had indicated they wanted to interview Dr. Holloway for the position.

142.    On February 11, 2025, Farmingdale's Administration abruptly cancelled the search for a full-time tenure-track faculty member in philosophy, falsely claiming that such a position was not necessary.

143.    Upon learning of the cancellation of the search and the reasoning provided, the current department chair, Mary Caulfield, and two members of the search committee responded that they absolutely needed a full-time tenure-track position in philosophy.  The chair of the search committee complained directly to the FSC's new President, Robert S. Prezant.

144.    President Prezant responded that Provost Laura Joseph played a direct role in the cancellation of the search.

145.    As a result of this harassment and abuse Dr. Holloway has suffered damages, including but not limited to: severe emotional distress; physical harm; professional harm; reputational harm; financial harm; and the loss of research, teaching materials, and other intellectual property.

## FIRST CLAIM FOR RELIEF
(Discrimination in Violation of Title VII)

146.    Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

147.    Defendant discriminated against Plaintiff on account of his sex, gender and/or sexual orientation, in the terms and conditions of his employment in violation of Title VII.


## SECOND CLAIM FOR RELIEF
(Retaliation in Violation of Title VII)

148.    Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

149.    Defendant retaliated against Plaintiff after he engaged in protected activity by making a complaint of discrimination on the basis of sex, gender, and sexual orientation in the terms and conditions of his employment in violation of Title VII.


## THIRD CLAIM FOR RELIEF
(Discrimination in Violation of Title IX)

150.    Plaintiff repeats and realleges the allegations contained in the preceding paragraph above as if fully set forth herein.

151.    Farmingdale is an educational institution receiving federal financial assistance.

152.    Farmingdale discriminated against Plaintiff, in violation of Title IX.

## FOURTH CLAIM FOR RELIEF
(Retaliation on Violation of Title IX)

153.    Plaintiff repeats and realleges the allegations contained in the preceding paragraph above as if fully set forth herein.

154.    Farmingdale is an educational institution receiving federal financial assistance.

155.    Farmingdale retaliated against Plaintiff after he complained about discrimination, in violation of Title IX.

WHEREFORE, Plaintiff demands a judgment:

A.    Reinstating Plaintiff's employment and granting him a continuing appointment;

B.    Enjoining Defendant from discriminating and retaliating against Plaintiff based on his sex, gender, or sexual orientation;

C.    Awarding Plaintiff back pay and front pay;

D.    Awarding Plaintiff compensatory damages, including but not limited to damages for emotional distress;

E.    Awarding Plaintiff punitive damages, in an amount to be determined by a jury;

F.    Awarding reasonable attorneys' fees, costs, and expenses, and

Granting such other legal and equitable relief to the Plaintiff as the Court may deem just and equitable.

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury of all issues as of right by a jury.

Dated:      New York, NY
            June 24, 2025

**GISKAN, SOLOTAROFF & ANDERSON LLP**

*/s/ Amy E. Robinson*

By:     Amy E. Robinson, Esq.
        Jason L. Solotaroff, Esq.
        1 Rockefeller Plaza, 8th Floor
        New York, NY 10020
        646-964-9609
        arobinson@gslawny.com
        jsolotaroff@gslawny.com
        *ATTORNEYS FOR PLAINTIFF*